Filed 11/16/21  P. v. Cabrera CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>SILVIO FABIEN CABRERA,<br><br>    Defendant and Appellant. | 2d Crim. No. B308997<br>(Super. Ct. No. NA075561)<br>(Los Angeles County) |

Silvio Fabien Cabrera appeals from a postjudgment order denying his petition for resentencing under Penal Code[1] section 1170.95.  Cabrera contends the court erred in summarily denying his petition without appointing counsel.  We agree that the court so erred (*People v. Lewis* (2021) 11 Cal.5th 952), but conclude the error is harmless because the record of appellant's conviction demonstrates he is ineligible for relief under section 1170.95.  Accordingly, we affirm.

---

[1] All statutory references are to the Penal Code.

## FACTUAL AND PROCEDURAL HISTORY[2]

In 2009, Kerry Everett, the 23-year-old victim, lived in unit 313 of a condominium complex at 550 Orange Avenue in Long Beach. Everett's friend, Tracy Gay, who owned unit 313, allowed him to stay there.

On August 27, 2009, at approximately 3:00 p.m., Everett knocked on his neighbor's door. He was bleeding, and said he had been robbed. The neighbor called 911. Everett died before Long Beach Police Department Homicide Detective Teryl Hubert arrived at the scene. There were some abrasions and one wound on the right side of his chest, and a contusion on his forehead. There was no hair on his wrists. Hubert thought it looked like the hair had been removed with tape.

In searching Everett's residence, police officers found a bloody plastic glove, crumpled pieces of duct tape, a torn gold necklace, and a pipe or glass for smoking methamphetamine. They found no signs of ransacking or a forced entry.

On August 28, 2009, Long Beach Police Officer William Foster arrested appellant for stealing a car, after its owner and her boyfriend detained him. Foster noticed a significant cut on appellant's hand and notified Detective Hubert, who was investigating the Everett stabbing. Detective Hubert interviewed appellant and executed a search warrant at his residence on August 28. His garage contained several of Everett's belongings, including car keys, a gold necklace, and a pair of tennis shoes.

---

[2] The relevant facts are recited from our 2012 opinion affirming the judgment against appellant, of which we take judicial notice. (*People v. Cabrera* (Jan. 30, 2012, B221500) [nonpub. opn.].) We also grant respondent's unopposed request for judicial notice of the record in the prior appeal. (Evid. Code, §§ 452, subd. (d), 459, subd. (a).)

Dr. Jeffrey Gutstadt, a deputy Los Angeles County medical examiner, concluded that Everett died as a result of a single stab wound to the chest. The wound was about four inches deep, five-eighths of an inch long, one-quarter of an inch wide, and was inflicted by a knife that pierced Everett's left chest and the front of his fifth rib before it entered the right ventricle of his heart.

Appellant testified that on August 27, 2007, in the morning, he went to Everett's condominium complex looking for a female acquaintance named "Aires," who he thought lived there. While standing outside the locked complex, he saw Everett, who asked him if he could get some methamphetamine. Appellant indicated he could, and followed him to Everett's condominium. They smoked some methamphetamine. Everett gave appellant money for the methamphetamine they had smoked, and to get more methamphetamine. Appellant left and tried, without success, to buy more, returned, and then went out again.

On his second trip, appellant saw Aires. Together, they went to buy methamphetamine, took it to her condominium, and smoked some. Appellant noticed that Aires had several rolls of duct tape, and she allowed him to take one. He returned to Everett's condominium, and found Everett watching male homosexual pornography on a laptop computer.

Appellant and Everett used more methamphetamine. Everett handed appellant a pair of plastic gloves and some cocoa butter and asked him to give him a massage. Appellant agreed to rub his back for $50, and did that for about 20 minutes. Both men were high. Everett then asked appellant to tie him up with tape and spank him. At first, appellant agreed to do that, and he put tape on Everett's wrists. Appellant became uncomfortable and asked Everett for the money he had earned for the back rub. Everett said he had no money at the moment, but that appellant

3

could wait for his boyfriend to return at 6:00 p.m. Appellant said he did not have time to wait, and asked Everett to pay him with the bucket of coins in the bedroom. Everett refused to give him the coins, produced a knife, lunged at appellant and slashed his hand. Appellant "somehow" ended up holding the knife. Everett knocked appellant down, climbed on top of him, and punched him. Appellant did not want to "stick" or stab Everett, and tried to get away. He ended up stabbing Everett to escape. He yanked off Everett's necklace, and took jewelry, a container of coins, and a pair of Everett's shoes, and left the condominium.

On August 28, 2009, when appellant spoke to the police, he described a version of his encounter with Everett that was similar to that which he testified at trial—with some differences. For example, before trial, appellant told the police that he tried to tie Everett with duct tape *after* he took the knife from Everett, in contrast to his trial testimony that Everett asked him to tie him with tape and spank him. At trial he explained that he had been embarrassed to tell the police why he tied up Everett. Before trial, he told the police that he left the knife in Everett's condominium. At trial, he testified that he took the knife with him and threw it into a bush.

In 2009, a jury convicted appellant of second degree murder (§ 187, subd. (a)) and found true the allegation that he personally used a deadly weapon in committing the offense (§ 12022, subd. (b)(1)). The jury did not return a finding on the felony murder allegation that the offense occurred during the commission of a robbery (§ 190.2, subd. (a)(17). In a bifurcated proceeding, the trial court found prior serious felony and strike allegations to be true. (§§ 667, subds. (a), (b)-(i), 1170.12, subds. (a)-(d).) Appellant was sentenced to 35 years to life in state prison. The

4

judgment against him was subsequently affirmed on appeal. (*People v. Cabrera*, *supra*, B221500.)

In September 2020, appellant filed a petition for resentencing pursuant to section 1170.95. The petition alleged among other things that "I was convicted of 2nd degree murder under the natural and probable consequences doctrine or under the 2nd degree felony murder doctrine and I could not now be convicted of murder because of changes to Penal Code § 188, effective January 1, 2019."

The trial court denied the petition without appointing counsel and prior to the filing of the prosecution's opposition. The court reasoned: "Although the prosecution alleged the special circumstance of felony murder, the jury did not find it to be true. . . . It is also clear from the jury's finding on the knife allegation that [appellant] was the actual killer. [¶] The court finds that [appellant] misstated the facts in his declaration accompanying the [petition]. He was not convicted pursuant to the felony murder rule or the natural and probable consequences doctrine and he was the actual killer. Therefore, the court does not appoint counsel and denies the petition."

## DISCUSSION

Appellant contends the trial court's denial of his petition for resentencing without appointing counsel violated his rights to the assistance of counsel and a fair hearing under section 1170.95 and the federal and state constitutions. We conclude the court erred in failing to appoint counsel, but deem the error harmless.

In 2018, the Legislature amended the felony murder and the natural and probable consequences doctrines to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless

5

indifference to human life.  (Stats. 2018, ch. 1015, § 1, subd. (f), p. 6678; *People v. Gentile* (2020) 10 Cal.5th 830, 842.)  The Legislature then amended sections 188 and 189, and added section 1170.95, to provide a procedure to persons previously convicted of murder pursuant to the felony murder or natural and probable consequences theories to obtain retroactive relief.  (*Gentile*, at p. 853 ["the Legislature intended section 1170.95 to be the exclusive avenue for retroactive relief under Senate Bill [No.] 1437"].)  To be eligible for resentencing, a defendant must establish that he "could not be convicted of first or second degree murder because of changes to Section 188 or 189 made effective" as part of Senate Bill No. 1437.  (§ 1170.95, subd. (a)(3).)

Subdivision (a) of section 1170.95 sets forth the requirements for a facially sufficient petition.  The petitioner must state that the charging document allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine; the petitioner was convicted of first or second degree murder; and the petitioner could not be convicted of first or second degree murder because of changes to Section 188 or 189, as effective on January 1, 2019.  Subdivision (b)(1)(A) of section 1170.95 states where and how the petition must be filed and specifies its required content, including a declaration by petitioner that he or she "is eligible for relief under this section, based on all the requirements of subdivision (a)."

If the petition meets the requirements of section 1170.95, subdivisions (a) and (b), the trial court proceeds to subdivision (c) to assess whether a prima facie showing for relief has been made.  In *Lewis, supra,* 11 Cal.5th 952, our Supreme Court held that if a defendant files a facially sufficient petition and requests the appointment of counsel, the court must appoint counsel and

6

entertain further briefing. (*Id.* at p. 957.) Only after the appointment of counsel and the opportunity for briefing may the court consider the record of conviction to determine whether petitioner made a prima facie showing that he or she is entitled to relief. (*Id.* at pp. 969-970.)

The record of conviction relates to the trial court's inquiry, distinguishing petitions with potential merit from those clearly meritless. (*Lewis*, *supra*, 11 Cal.5th at p. 971.) In making its preliminary assessment regarding petitioner's allegations, the court does not engage in fact finding and must take petitioner's allegations as true. (*Ibid.*) However, if the record of conviction, including the court's documents, refute the allegations in the petition, the court may make a credibility determination adverse to petitioner. (*Ibid.*)

Here, appellant's petition for resentencing met the requirements for facial sufficiency and he requested the appointment of counsel. The trial court thus erred in summarily denying his petition without first appointing counsel. (*Lewis*, *supra*, 11 Cal.5th at pp. 969-970.) The court in *Lewis* nevertheless concluded that deprivation of a petitioner's right to counsel in this context is state law error only, tested for prejudice under the standard established in *People v. Watson* (1956) 46 Cal.2d 818.) Moreover, any error in summarily denying a section 1170.95 petition is harmless unless the petitioner can show ""'it is reasonably probable that if [he or she] had been afforded assistance of counsel his [or her] petition would not have been summarily denied without an evidentiary hearing."'" (*Lewis*, at p. 974.)

We conclude that the trial court's error in failing to appoint counsel and summarily denying the petition is harmless. Contrary to appellant's claim, the record of conviction

unequivocally establishes that he was convicted of murder as the actual killer; indeed, appellant admitted he was the actual killer, and the jury rejected his claim that he acted in self-defense. The jury also found that in committing that offense appellant personally used a deadly weapon, i.e., a knife. Moreover, the jury was not instructed on the natural and probable consequences doctrine and declined to find the felony murder allegation true. Although appellant notes that the true finding on the personal weapon use allegation is insufficient by itself to demonstrate he was the actual killer (see, e.g., *People v. Berry* (1993) 17 Cal.App.4th 332. 338), the record of conviction as a whole plainly establishes that he was convicted on that theory. Accordingly, he is not entitled to resentencing under section 1170.95.

## DISPOSITION

The order dismissing appellant's section 1170.95 petition is affirmed.

NOT TO BE PUBLISHED.

PERREN, J.

We concur:

GILBERT, P. J.

TANGEMAN, J.

8

Laura L. Laesecke, Judge
Superior Court County of Los Angeles

_____

Jonathan E. Demson, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Noah P. Hill, Supervising Deputy Attorney General, and Marc A. Kohm, Deputy Attorney General, for Plaintiff and Respondent.